UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
IN ADMIRALTY

CASE NO.

ABRAHAM WALLACE, GLENFORD PALMER, NOEL ROY PEART, GRANVILLE WHITE, DELROY SMITH, ERRINGTON KERR, EASTON M. HARRIS, ADRIAN NASH, EASTON M. HARRIS, JOHN GEORGE JAMES, CECIL HARRIS, HURBERT LUKE, EVEROL BARRANT, NOLDON THOMPSON, ANTHONY JOHNSON, NOEL MAIS, ERICKSON HARRISON, MCLEOD GIBSON, YOUCKING PRYCE, LEON ROMANS, NOEL EVERRET, PERCIVAL BENTLEY, EDWARD MCNEIL, GEORGE GREGORY, WILLIAMS LLOYD, WORREL BROWN, TERRENCE COUNTAIM, GARFIELD WILLIAM, OWEN WILSON, DAVE LEWIS, each on their own behalf, and on behalf of all other current and former employees of Norwegian Cruise Lines Limited similarly situated.

Plaintiff(s),
v.

NORWEGIAN CRUISE LINE LIMITED, and
NCL (BAHAMAS) LTD.
Defendants.
_____/

**09-21814**

**CIV-JORDAN**

/ McALILEY

FILED by AJS D.C.

JUN 3 0 2009

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

## SEAMEN COMPLAINT WITHOUT PREPAYMENT OF COSTS

**COME NOW**, the Plaintiffs each on their own behalf and on behalf of all other current and former employees of Norwegian Cruise Lines Limited or NCL (Bahamas) LTD, similarly situated, by and through undersigned counsel, and sue the Defendants, NORWEGIAN CRUISE LINE LIMITED and NCL (BAHAMAS) LTD. (hereafter referred to as "NORWEGIAN"), and for their cause of action, allege the following:

**PRELIMINARY ALLEGATIONS**

1

1. This is a case of admiralty and maritime jurisdiction, as hereinafter more fully appears. This is an admiralty or maritime claim within the meaning of Rule 9(h). Plaintiffs are seaman within the meaning of 28 U.S.C. 1916 and are entitled to file suit without prepayment of costs.

2. Defendants, at all times material hereto, personally or through an agent;
    a. Operated, conducted, engaged in or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;
    b. Were engaged in substantial activity within this state and registered as a corporation doing business in the State of Florida;
    c. Operated vessels in the waters of this state including the vessels on which Plaintiffs were employed.
    d. Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193;
    e. As seamen, Plaintiffs are entitled to bring their lawsuit in any jurisdiction and venue where the Defendant can be found. The Defendants can be found in Miami Dade County, Florida. Defendants' vessels call on the port of Miami. Defendant or its related companies have litigated in courts in Miami Dade County, Florida.

3. Defendants, NORWEGIAN CRUISE LINES LTD. and NCL (BAHAMAS) LTD. (hereinafter "NORWEGIAN"), are corporations incorporated under the laws of the Bahamas, but have their principal place of business in Florida.

4. The causes of action asserted in this Complaint arise under the Seaman's Wage Act, 46 U.S.C. Section 10313, and the General Maritime Law of the United States.

2

5. At all times material, Defendant, NORWEGIAN, owned, operated, managed, maintained and/or controlled the vessels on which Plaintiffs worked. The vessels include, but are not limited to, the *M/V SUN, M/V JEWEL, M/V PEARL, M/V DREAM, M/V DAWN, M/V MAJESTY, M/V STAR, M/V SKY*.

6. The acts of Defendants set out in this Complaint occurred in whole or in part in this country and/or state.

7. At all times material hereto, Defendants' vessels are Bahamian Flagged vessels.

8. At all times material hereto NORWEGIAN, personally or through an agent;
   a. Operated, conducted, engaged in or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;
   b. Were engaged in substantial activity within this state;
   c. Operated vessels in the waters of this state;
   d. Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193.

9. At all times material hereto, Plaintiffs were employed by Defendants to work on Defendants' vessels as Senior Stateroom Stewards.

10. Plaintiffs' employment agreement with Defendants incorporates by reference a Collective Bargaining Agreement containing the terms of their employment.

11. Article 3(1) of the CBA states that "each month the Seafarer is on board; he shall be entitled to payment of one hundred (100) percent of the Seafarer's Monthly Guaranteed Pay and Extra Overtime Compensation, after approved deductions have been made." The wages of helpers are not deductions contemplated by the CBA and, as such, Plaintiffs were to be paid one hundred (100) percent of their earned wages.

Earned wages included tips. Plaintiffs were never paid the Guaranteed Pay and Extra Overtime Compensation.

12. Defendants knowingly allocated Plaintiffs an unreasonable amount of work to be accomplished within an unreasonable timeframe.

13. Defendants knew or should have known that Plaintiffs, alone, would not be able to finish their assigned tasks within the timeframe given by Defendants.

14. Defendants knew that, as a result of the unreasonable workload given to Plaintiffs and as a result of their unreasonable request to accomplish the task in a short timeframe, Plaintiffs were forced to and did hire helpers which plaintiffs were forced to pay for in spite of their protesting the situation to their superiors.

15. Additionally, in 2000, Defendants changed their cruises to a "Freestyle Cruising."

16. Defendants knew that, when they changed the type of cruising in 2000, the Plaintiffs' workload would and further did increase.

17. Defendants knew that the increase in the workload would and did cause the helpers to demand more money from the plaintiffs.

18. Defendants knew that the Plaintiffs were forced to and did pay the helpers higher earnings.

19. Defendants knew that the helpers higher earnings would, consequently, decrease the Plaintiffs' earnings.

20. After numerous complaints by Plaintiffs, Defendants investigated the situation.

21. Defendants' investigator(s) asked some of the Plaintiffs how many helpers they had and how much they paid them.

22. After the investigation, Plaintiffs were eventually fired without just cause.

23. Had Defendants not fired Plaintiffs, Plaintiffs would have all been eligible for Defendants' Retirement Plan. Defendants had a scheme to fire workers who would have been eligible for retirement benefits in order to avoid paying them those benefits.

24. Clause 4 of Defendants' "Freestyle" Retirement Plan provides that "breaks in service due to termination or resignation will result in no creditable service for those leaving who are not eligible to retire, even if subsequently re-hired. Any period of more than one year with no crew assignment will be considered a break in service."

25. Plaintiffs have worked for a minimum of eight (8) years and up to 39 years for Defendants.

26. Defendants also organized a Recall Process for recalling team members laid off.

27. Some of the Plaintiffs have been fired for a period of more than one year and then re-hired. As a result, Plaintiffs still will not be eligible for the "Freestyle" Retirement Plan.

28. Some of the Plaintiffs still have not been re-hired.

29. Plaintiffs, Senior Stateroom Stewards, were replaced by the Stateroom Stewards and Defendants hired Junior Stateroom Stewards to replace the Stateroom Stewards. The helpers remained.

30. Defendants violated the employment contract by forcing Plaintiffs to pay helpers out of their own earned wages.

31. Defendants acted in bad faith by firing Plaintiffs in order to eliminate their eligibility for the "Freestyle" Retirement Plan.

**CLASS ACTION ALLEGATIONS**

32. This action is brought by Plaintiffs as a class action, on their own behalf, and on behalf of all others similarly situated, under the provisions of Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.

33. The class so represented by the Plaintiffs in this action, and of which Plaintiffs are members, consists of all current and former employees of Norwegian Cruise Lines Ltd. and/or NCL (Bahamas) Ltd. employed at any time during the period of three years preceeding the filing of this complaint and those employed in the future with the same duties as "senior cabin stewards" (or "senior cabin stewardesses") or "senior stateroom attendants" on Norwegian's vessels who are covered by the Collective Bargaining Agreement between NCL (Bahamas) Ltd. and Norwegian Seafarers' Union, dated December 23rd, 2004, as renewed thereafter, and who were discharged in a United States port from their respective vessels or whose voyage started or ended in U.S. Ports and Harbors.

34. The first class of employees were, and continue to be, subjected to illegal withholding and delay of their wages, nonpayment of their wages, as a result of the requirements imposed upon them by Norwegian that they hire and pay out of their own wages helpers for embarkation. These constitute a breach of the CBA, as to which Norwegian's current and former employees are entitled to benefit from and are entitled to enforce its provisions.

35. The second class of employees were, and continue to be, subjected to illegal withholding and delay of their retirement benefits. Norwegian set up a scheme to fire Senior Stateroom Attendants who would have been eligible for the "Freestyle" Retirement Plan and by doing so interfered with their retirement benefits.

36. Both class of employees were and continue to be subjected to the Union's unfair labor practices in representation of its members, consisting of discriminatory, dishonest, arbitrary or perfunctory conduct.

37. The exact number of members of the class is not known, but it is estimated that there are in excess of 380 members. The class is so numerous that joinder of all members is impracticable. This action satisfies the requirements of Rule 23(a)(1).

38. There are common questions of law and fact that relate to and affect the rights of each members of the class and the relief sought is common to the entire class. The same or similar misconduct on the part of Defendants occurred involving each individual class members, and each seeks to recover for violations under Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185, for the Union's breach of the duty of fair representation and Norwegian's unlawful breach of the Collective Bargaining Agreement and employment agreement and violation of Seaman's Wage Act, 46 U.S.C. § 10313. This action satisfies the requirement of Rule 23(a)(2).

39. The claims of Plaintiffs are typical of the claims of the class, in that the claims of all members of the class, including Plaintiffs, depend upon a showing of the acts and omissions of Defendants Norwegian, giving rise to the right of Plaintiffs to the relief sought herein. Defendants are engaged in a common course of conduct to the detriment of the class of Plaintiffs. This action satisfies the requirements of Rule 23(a)(3).

40. Plaintiffs are the representative parties for the class, and are able to, and will, fairly and adequately protect the interests of the class. There is no conflict between Plaintiffs and other members of the class with respect to this action, or with respect to

the claims for relief herein. The attorneys for Plaintiffs are experienced and capable in the field of maritime claims for wages, including class actions, and have successfully represented claimants in other litigation of this nature. This action satisfies the requirement of Rule 23(a)(4).

41. This action is properly maintained as a class action under Rule 23(b)(3) in as much as questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to the other available methods for the fair and efficient adjudication of controversy. In support of the forgoing, Plaintiffs allege that common issues predominate and can be determined on a class-wide basis regarding: a) the Collective Bargaining Agreement pertaining to the wages of the class members, and b) the employment agreement pertaining to the wages of the class members c) the interference with the retirement benefits.

42. A class action is superior to other available methods for the fair and efficient adjudication of controversy because it is highly unlikely that individual plaintiffs would assume the burden and the cost of this complex litigation, and Plaintiffs are not aware of any class members who are interested in individually controlling the prosecution of a separate action. The interests of justice will be served by resolving the common disputes of the class members with Norwegian Cruise Lines Ltd and NCL (Bahamas) Ltd. in a single forum, and individual actions by class members, many of whom are foreign nationals would not be cost effective. The class consists of a finite and identifiable number of individuals which will make the matter manageable as a class action.

## COUNT I- DECLARATORY DECREE

43. Plaintiffs re-allege, adopt and incorporate by reference the allegations in paragraph 1 through 42 as though alleged originally herein.

44. The Collective Bargaining Agreement (hereafter referenced to as "CBA") includes the terms of Plaintiffs' employments, including wages and dispute resolution.

45. The CBA was negotiated between the Norwegian Union, on behalf of Plaintiffs and others similarly situated, and the Defendants.

46. The employment contract between the Plaintiffs, seafarers, and the Defendants, NORWEGIAN, makes provision for arbitration in case of a dispute. Attached hereto is a copy of one or more of the employment agreements. They are all identical or virtually identical in relationship to the arbitration provision.

47. The arbitration clause contained within the employment agreement provides that:

    e. "Arbitration shall be administered by the American Arbitration Association ("AAA") under as International Dispute Resolution Procedures"

    f. ***"The substantive law to be applied shall be the law of the flag of the vessel"*** (emphasis added)

    g. "The language of the arbitration shall be English"

    h. The arbitration shall be in the seaman's country of citizenship, unless arbitration is unavailable under The New York Convention of 1958 in that country, in which case it shall take place in Nassau, Bahamas.

48. Plaintiffs are all citizens of Jamaica. Jamaica's date of accession is July 10th, 2002. The Convention entered into force on October 8th, 2002. As such, if arbitration were to take place, it should take place in Jamaica.

49. All of Defendants' relevant vessels are flagged in the Bahamas; consequently, **the applicable law under the employment contract would be that of the Bahamas**.

50. An arbitration clause is enforceable as long as it does not eliminate a party's fundamental or statutory rights.

51. An arbitration agreement is not binding if it inherently conflicts with Plaintiff's statutory rights.

52. The Plaintiffs have statutory or fundamental rights under the Seaman's Wage Act, 46 U.S.C. 10313 (hereafter Seaman's Wage Act) against the defendants.

53. The arbitration clause in the employment agreement inherently conflicts with the Seaman's Wage Act created for the purpose of protecting Seamen, such as Plaintiffs, with respect to being paid their earned wages.

54. The Bahamas do not have and/or do not apply the Seaman's Wage Act or any similar recourse available for Plaintiffs. The Bahamas only have an Employment Act, which provides for a maximum award of $500 for the first offence and up to $1,000 for a subsequent offence of violating wage obligations that the employer has towards his employee.

55. Consequently, the substantive law chose by Defendants in the relevant arbitration clause strips Plaintiffs of their statutory wage rights.

56. Additionally, the arbitration clause contained in the employment agreement does not provide for the allocation of costs of arbitration.

57. Plaintiffs are unable to pay for the costs of arbitration.

58. Defendants have already forced Plaintiffs to pay helpers out of their own wages, breaching the contractual agreement, and limiting their income. Defendants also eventually fired Plaintiffs without just cause.

59. Plaintiffs do not have the financial resources to arbitrate under the terms of the contract as it would be overly burdensome and would cause Plaintiffs undue hardship, while limiting their claims by eliminating the U.S. Applicable law.

60. Other cruise lines, such as Royal Caribbean Cruises Ltd., provide an arbitration clause in which they pay all the expenses. Attached hereto please find a true and accurate copy of a Royal Caribbean arbitration clause.

**WHEREFORE**, Plaintiffs request that the contract be declared void.

## COUNT II – WAGES AND PENALTIES
## 46 USCA SECTION 10313

61. Plaintiffs re-allege, adopt and incorporate by reference the allegations in paragraph 1 through 42 as though alleged originally herein.

62. At all times material hereto, Plaintiffs were employed as seamen in the service of Defendants' vessels.

63. While in the service of the ship, Plaintiffs performed all the work required of them and carried out the orders given to them by their superiors.

64. The Collective Bargaining Agreement (hereafter referenced to as "CBA") includes the terms of Plaintiffs' employments, including wages and dispute resolution.

65. The CBA was negotiated between the Norwegian Union, on behalf of Plaintiffs and others similarly situated, and the Defendants.

66. Pursuant to their agreement with Defendants, Plaintiffs have a right to their full wages.

67. During 2000, Defendants introduced the "Freestyle Cruising." After the introduction of "Freestyle Cruising," Plaintiffs' workload increased.

68. In the past, Senior Stateroom Stewards were assigned about seventeen (17) cabins. As of 2000, Senior Stateroom Stewards were assigned about 35 cabins.

69. Although Senior Stateroom Stewards' workload increased, their wages did not.

70. Senior Stateroom Stewards were forced to and did pay the helpers even before the 2000 change in Cruising-style. However, after the change, the helpers received a higher pay for their work from the Plaintiffs.

71. Consequently, Senior Stateroom Stewards earnings dropped by reason of having to pay the helpers more money out of their earned wages.

72. In breach of Article 3 of the CBA, including breach of the CBA Annex 1 and the Employment Agreement, Plaintiffs were forced to and did pay part of their earned wages to helpers.

73. During a nine (9) months contract, Senior Stateroom Stewards spent at least $5,400.00 of their earned wages to pay the helpers.

74. Defendants failed to properly pay the Plaintiffs their earned wages with respect to voyages that began or finished in ports of the United States

75. Defendants have sole custody and control of Plaintiffs' wage records and personnel file. These documents are needed by Plaintiffs to show exact dates and amounts with respect to earned wages owed to Plaintiff and deductions made from such earned wages.

76. At the time of Plaintiffs' discharges, Plaintiffs demanded all of their wages, including reimbursement of deductions made from Plaintiff's earned wages.

77. The scheme set up by Defendants which forced Plaintiffs to make payments out of their earned wages to their helpers amounts to an illegal deduction from Plaintiffs' earned wages. These deductions were made without sufficient cause.

78. Under 46 U.S.C. Section 10313, Plaintiffs are entitled to their earned wages, deductions and two days wages for each day payment is delayed.

**WHEREFORE**, Plaintiff demands judgment against Defendant for damages, wage penalties, attorney's fees and interest as permitted by law.

### COUNT III – LOSS OF RETIREMENT BENEFITS

79. Plaintiffs re-allege, adopt and incorporate by reference the allegations in paragraph 1 through 42 as though alleged originally herein.

80. Defendants instituted the "Freestyle" Retirement Plan, taking effect on January 1st, 2009 and being fully operational on or about January 1st, 2011.

81. The retirement plan provides that a crew member aged 55 or older and with 10 or more years of service would receive the following lump sum at retirement (after 1/1/2011) in the following amount:
    a. More than 10 but less than 15 years of service, $5,000
    b. More than 15 but less than 20 years of service, $7,500
    c. More than 20 but less than 25 years of service, $10,000
    d. 25 or more years of service, $25,000

82. The retirement plan also provides that "breaks in the service due to termination or resignation will result in no creditable service for those leaving who are not eligible to retire, even if subsequently re-hired. Any period of more than one year with no crew assignment will be considered a break in service.

83. Plaintiffs worked for Defendants between eight (8) and 39 years. As such, Plaintiffs would have been entitled to the retirement benefits after January 1st, 2011, when the plan would become operational.

84. Plaintiffs were all fired by Defendants without just cause. As a result of being fired, Plaintiffs are no longer eligible for the retirement plan.

85. Defendants set up a re-hiring process. Some of the Plaintiffs were re-hired; however, because Plaintiffs were fired, the interruption in their service makes them ineligible for the retirement plan.

86. Plaintiffs who were not re-hired also have not and will not receive any retirement benefits, including, but not limited to, the "Freestyle" retirement benefits.

**WHEREFORE**, Plaintiff demands judgment against Defendant for damages and attorney's fees as permitted by law.

## COUNT IV – BAD FAITH

87. Plaintiffs re-allege, adopt and incorporate by reference the allegations in paragraph 1 through 42 as though alleged originally herein.

88. Every contract includes a duty of good faith and fair dealing implied by law, which requires a party to perform in a manner that will protect the other party's reasonable expectations under the contract.

89. Defendants did not perform their duties under the contract in accordance with the

implied duty of good faith and fair dealing.

90. Under the contract, Defendants required Plaintiffs to perform their duties as Senior Cabin Stewards. Plaintiffs did perform their part of the contract.

91. Under the contract and in exchange for performance, Defendants were to pay Plaintiffs there full earned wages. Defendants knowingly failed to pay Plaintiffs' earned wages, in breach of their employment agreement and in breach of the CBA article 3(1).

92. In fact, Defendants knowingly gave Plaintiffs an unreasonable workload to be accomplished within an unreasonable timeframe.

93. Defendants knew that Plaintiffs were forced to and did hire helpers in order to accomplish the tasks Defendants assigned.

94. Plaintiffs knew that if they did not accomplish their tasks, they would be fired.

95. Defendants knew that Plaintiffs were forced to and did pay helpers from their own wages due to the unreasonable workload it gave Plaintiffs.

96. Defendants knowingly and in bad faith forced Plaintiffs to hire and pay helpers, forcing them to receive less than their earned wages.

97. Additionally, in order to evade their contractual obligation to provide Plaintiffs with retirement benefits, Defendants knowingly and intentionally fired Plaintiffs without just cause.

98. Defendants' decision to fire Plaintiffs without just cause interferes with Plaintiffs' right to the retirement benefits, including, but not limited, the "Freestyle" Retirement Plan.

99. Defendants' decision to fired Plaintiffs without just cause is also in breach of the

CBA article 5 and in breach of the employment agreement.

100. Defendants at all time's material hereto, were aware of the conflicting policies.

101. Defendants did not perform in accordance with the implied duty of good faith and fair dealing, when it knowingly and willfully knew Plaintiffs were not receiving their full earned wages.

102. Defendants did not perform in accordance with the implied duty of good faith and fair dealing when it knowingly and willfully knew it was interfering with Plaintiffs' retirement benefits.

103. Defendants' breaches of implied duty of good faith and fair dealing are the direct and legal causes of Plaintiffs' damages.

**WHEREFORE**, Plaintiff demands judgment for damages and such other relief as this Court deems necessary.

LIPCON, MARGULIES & ALSINA, P.A.
Attorneys for Plaintiff
One Biscayne Tower, Suite 1776
2 S. Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 373-3016
Facsimile: (305) 373-6204

By: _____
Charles R. Lipcon
Florida Bar # 137942

JS 44 (Rev. 2/08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)   NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.

**09-21814**

### I. (a) PLAINTIFFS
ABRAHAM WALLACE ET AL.

(b) County of Residence of First Listed Plaintiff: N/A
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) Attorney's (Firm Name, Address, and Telephone Number)
LIPCON, MARGULIES + ALSINA, P.A.
2 S. BISCAYNE BLVD., #1776
MIAMI, FL 33131
305-373-3016

### DEFENDANTS
NORWEGIAN CRUISE LINE LIMITED AND NCL (BAHAMAS) LTD.

County of Residence of First Listed Defendant: MIAMI-DADE
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

Attorneys (If Known): **CIV-JORDAN / McALILEY**

FILED by AJS D.C.
JUN 30 2009
STEVEN M. LARIMORE
CLERK U.S. DISTRICT
S.D. of FLA. – MIAMI

(d) Check County Where Action Arose: ☒ MIAMI-DADE ☐ MONROE ☐ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE ☐ HIGHLANDS

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)
☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

09-CV-21814-Jordan/McAliley

### III. CITIZENSHIP OF PRINCIPAL PARTIES (For Diversity Cases Only) (Place an "X" in One Box for Plaintiff and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☒ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | PROPERTY RIGHTS | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | PERSONAL PROPERTY | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | LABOR | SOCIAL SECURITY | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | FEDERAL TAX SUITS | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus: | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | | ☐ 871 IRS – Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | IMMIGRATION | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

### V. ORIGIN (Place an "X" in One Box Only)
☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

### VI. RELATED/RE-FILED CASE(S).
(See instructions second page):
a) Re-filed Case ☐ YES ☒ NO     b) Related Cases ☐ YES ☒ NO
JUDGE _____     DOCKET NUMBER _____

### VII. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity): 46 USC § 10313

LENGTH OF TRIAL via 5 days estimated (for both sides to try entire case)

### VIII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD     DATE 6/30/2009

FOR OFFICE USE ONLY
AMOUNT $350.00     RECEIPT # 100374     06/30/09